IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-2279-PAB-KMT

KATHERINE DINES, an individual

Plaintiff,

v.

TOYS "R" US-DELAWARE, INC., a Delaware corporation,

Defendant.

## PLAINTIFF'S MOTION TO COMPEL INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS, AND FOR SANCTIONS

Plaintiff Katherine Dines moves the Court pursuant to Fed. R. Civ. P. 37 (1) for an order directing Defendant Toys "R" Us-Delaware, Inc. ("TRU") to (a) produce all documents disclosed in Defendant Toys "R" Us, Inc.'s Rule 26 Disclosures, (b) produce all documents responsive to Requests 1, 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16 and 22 of Plaintiff's First Set of Requests for Production of Documents, (c) provide full and complete responses to Interrogatories 1, 2, 9, 10, 11 and 12 of Plaintiff's First Set of Interrogatories, and (2) for sanctions for failure to timely provide this information.   In support of this motion, Ms. Dines states as follows:

### INTRODUCTION

This complaint in this case was served in November 2012.   Initial disclosures were exchanged on January 14, 2013. *See* Exhibit A.  Ms. Dines served her first sets of interrogatories and requests for production on TRU on February 1, 2013, and TRU

responded on March 3, 2013.  *See* attached Exhibits B and C.  No documents – and virtually no information– were produced with either the disclosures or the discovery responses

After 4½ months of attempting to obtain documents and meaningful interrogatory responses from Defendant, Ms. Dines has received from TRU's files seven pages of internal e-mails, six screen shot images of media advertising, a handful of organizational charts, and nine small unidentified or unusable "native" files.  TRU has not produced any documents described in its disclosures or covered by many of the documents requests.  It has refused to meaningfully respond to numerous basic interrogatories.  No depositions have taken place for the simple reason that TRU has refused to identify the relevant witnesses.

Expert reports are due in six weeks.  TRU is transparently playing a delay game to stymie any discovery by Ms. Dines.  Accordingly, Ms. Dines requests the Court to enter an order compelling TRU to <u>fully and completely</u> respond within ten days to the outstanding discovery requests, and to produce all documents identified in its initial disclosures.

## CERTIFICATION

Counsel for Plaintiff certifies, as outlined below, that he has conferred and made numerous reasonable, good-faith efforts to confer with counsel for TRU pursuant to D.C.COLO.LCivR 7.1A to resolve the matters raised in this motion.

**BACKGROUND**

Plaintiff Katherine Dines is an award-winning children's songwriter, recording and teaching arties who, since the early 1990s, has performed and sold children's music and other products throughout the world under the Hunk-Ta-Bunk-Ta® brand. Ms. Dines is the owner of U.S. Trademark No. 2,078,895, for "HUNK-TA-BUNK-TA" (hereinafter the "HUNK-TA-BUNK-TA Mark"), which she has continuously used since at least 1997.

In 2012, Ms. Dines was informed, and later confirmed, that TRU was advertising and selling children's products using the phrase Hunk-Ta-Bunk-Ta®. Further investigation to date has uncovered evidence that TRU has used the Hunk-Ta-Bunk-Ta® mark in a variety of ways:

a.      TRU has advertised a line of stuffed animals known as "Animal Alley" products on various websites it controls, and identified those products as "By: Hunk Ta Bunk Ta." TRU has sold these products (a) over the Internet through these websites, (b) through its "bricks and mortar" stores using links on these websites which allow customers to order the products on line and pick them up at stores, (c) in its "bricks and mortar" stores using advertising on these websites which informs customers which stores have the products in stock so that they may be examined and purchased in person, and (d) in its "bricks and mortar" stores by attracting customers through more traditional in-store displays and advertising, through the in-store use of Internet comparison and advertising sites, and traditional print media advertising.

b.     TRU has sold or arranged for the sale of these Animal Alley products in bulk to resellers who have in turn sold them by various methods.   As part of these transactions, TRU has represented to the resellers, and provided the resellers with data and information representing, that the Animal Alley products were Hunk-Ta-Bunk-Ta® products.   These resellers, in turn, have advertised and sold the TRU Animal Alley products as Hunk-Ta-Bunk-Ta® products.

c.     TRU has entered into agreements and paid a number of web advertisers to market the Animal Alley products on the Internet using the Hunk-Ta-Bunk-Ta® mark. As part of these transactions, TRU has represented to the advertisers and provided these advertisers with data and information representing that the Animal Alley products were Hunk-Ta-Bunk-Ta® products.   These advertisers, in turn, advertised the TRU Animal Alley products using the Hunk-Ta-Bunk-Ta® mark, thus promoting both TRU's on line and "bricks and mortar" sales.

On May 4, 2012, after Ms. Dines discovered some of these actions, she notified TRU through her counsel of her claims and, *inter alia*, demanded information concerning the products and TRU's sales.   When TRU refused to comply, Ms. Dines brought the present action alleging claims against TRU for trademark infringement, false designation of origin and unfair competition under the Lanham Act and common law.

In its Answer and later pleadings, TRU claimed that it was unaware that the Hunk-Ta-Bunk-Ta® mark was being used on the websites it controlled, and had no information concerning how those websites came to use the Hunk-Ta-Bunk-Ta® mark. *See, e.g.*, Answer **[15]**; Proposed Scheduling Order **[16]**.   It also contended that upon receiving notice from Ms. Dines, it "immediately removed any and all references to or

use of the 'Hunk Ta Bunk Ta' designation…." Proposed Scheduling Order **[16]**, p. 3.

## THE REQUESTED INFORMATION

In its Rule 26 Disclosures served on January 14, 2013, TRU disclosed two senior executives whom, it said "may have discoverable information" concerning some of the matters at issue.  There is no indication in the Disclosures that these individuals have any direct knowledge of the facts of this case.  TRU also disclosed a long list of documents, including documents demonstrating how TRU creates its website listings, documents regarding how TRU's website listings at issue were created, and documents evidencing TRU's cessation of the use of the "Hunk Ta Bunk Ta" working on the TRU website.  However, no documents were produced with the Rule 26 Disclosures.

Thereafter, on February 1, 2013, Ms. Dines served TRU with Plaintiff's First Set of Requests for Production of Documents and Plaintiff's First Set of Interrogatories. These discovery requests were comprehensive, seeking basic information, the names of relevant witnesses, and a variety of documents relating to the products and TRU's activities as outlined above. *See* Exhibits B and C.

## TRU'S DISCOVERY RESPONSES

TRU responded to the discovery requests on March 3, 2013.  *See* attached Exhibits B and C.  TRU did not identify a single witness in those responses, or produce a single document with the responses.  With regard to fundamental interrogatories seeking basic information, TRU objected, dissembled, and generally avoided providing any information. *See*, *e.g.* Exhibit B, responses to Interrogatories 1, 2, 9, 10, 11 and 12.

On April 3 and 5, 2013, counsel for Ms. Dines raised the issue of TRU's failure to produce documents counsel for Plaintiff.  In a later telephone conversation, counsel for

TRU indicated that TRU would not produce any documents, even concededly non-confidential documents, until the entry of a protective order.  Though most of the requested documents and information cannot be considered confidential or proprietary, rather than bring the dispute to the Court, Plaintiff acquiesced.

When counsel for Ms. Dines sought to stipulate to the prompt entry of a basic protective order patterned on *Gillard v. Boulder Valley School District*, 196 F.R.D. 382 (D. Colo. 2000), TRU again delayed, this time demanding that a "Highly Confidential − Attorneys' Eyes Only" category be included.  A protective order sought by TRU was finally entered by the Court on May 14, 2013.

When no documents were received, counsel for Plaintiff on May 20, 2013, asked when the documents would be produced.  The same day, counsel for TRU responded that his client would "start producing documents" the week of May 20, 2013.

When no documents were produced as promised, counsel for Plaintiff on May 28, 2013, again wrote counsel for TRU asking when the documents would be produced. The following day, TRU finally produced documents responsive to the requests for production served four months earlier.  The response: <u>TRU produced 23 pages of documents, all of them correspondence from Ms. Dines' counsel to TRU and its counsel</u>.  *See* Exhibit C.  <u>Not a single document, electronic record, or item from TRU's files was produced.  Nor were any interrogatory responses supplemented or answered.</u>

**ATTEMPTS TO RESOLVE PURSUANT TO D.C.COLO.LCivR 7.1A**

After receipt of TRU's "document production," counsel for Ms. Dines began the process of conferring pursuant to D.C.COLO.LCivR 7.1A.  Initially, TRU's counsel said that TRU was making a "rolling production" and that additional documents would be received "in due course."  Counsel for Ms. Dines immediately wrote counsel for TRU, indicating that this was unacceptable and that Plaintiff needed a date certain by which all responsive documents would be produced.

Counsel for Ms. Dines thereafter called counsel for TRU on May 30, 2013.  During that conversation, counsel for TRU stated that TRU had documents to produce, but was still looking for more.  Counsel for Ms. Dines stated that all available documents should have been produced long ago, and again asked for a date certain by which all documents would be produced by TRU.  Counsel for TRU indicated that she could not provide such a date at that time, but would call back with a date certain.

When no response was received on May 30, counsel for Ms. Dines again contacted defense counsel asking for a date certain by which all responsive documents would be produced.  After considerable back and forth, TRU agreed that it would fully respond to the interrogatories and requests for production no later than June 14, 2013.

On June 14, 2013, counsel for Ms. Dines received Defendant Toys "R" Us-Delaware, Inc.'s Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Exhibit E), along with a note indicating that TRU was sending a CD containing responsive documents via Federal Express.  The CD was received on June 17, 2013, more than 4½ months after the interrogatories and requests for production were served.  This CD listed 183 Bates numbered items plus small 2 files in "native"

format that Ms. Dines, to date, has been unable to open.   The Bates numbered materials included:

- 118 pages of documents, files or e-mails containing communications with Ms. Dines' counsel prior to litigation, *i.e.* items already in Plaintiff's possession.

- 39 pages and 2 files of TRU organizational charts which, though responsive, were marginally informative.

- 10 pages of documents prepared by TRU or its counsel for litigation purposes.

- 7 unidentified "native" files that may be original materials from TRU.

- 7 pages of internal e-mails from TRU.

<u>In short, after waiting 4½ months for production of materials from TRU's files, Ms. Dines received TRU organizational charts, 9 unidentified or unusable "native" files, and 7 pages of internal TRU e-mails.</u>

Counsel for Ms. Dines once again attempted to confer pursuant to D.C.COLO.LCivR 7.1A.   He pointed out the gross deficiencies in the responses, and again requested that TRU <u>fully</u> respond by a date certain.   When he was finally able to speak with counsel for TRU by phone, she indicated that she could not agree that any particular documents or information would be provided, or agree to any date by which such materials would be provided.   Counsel for Ms. Dines stated that Plaintiff would wait until the close of business on June 24 to hear if and when TRU would fully and completely respond to the discovery requests at issue.

At approximately 4:08 p.m. on June 24, counsel for Ms. Dines received an e-mail.   Attached to the e-mail were six images of what appear to be media and/or in-store

advertisements for Animal Alley products.  No other documents were produced.  In a cover letter with that e-mail, counsel for TRU generally refused to produce any additional documents, and simply started that it would produce any additional responsive documents when discovered.

## ARGUMENT

The present case presents a classic case of a party delaying production of any documentation from its files for months in a transparent effort to stall discovery, and then producing virtually no meaningful, responsive documentation when production does occur.

Originally, ostensible reason for not producing documents was the lack of a protective order.  *See, e.g.* Exhibit C.  In the first place, many of the documents covered by TRU's Rule 26(a)(1) Disclosures cannot, under any circumstances, be considered confidential or proprietary.  *See* attached Ex. A, §II, ¶¶B, C, D, G, H, and I.  Similarly, documents responsive to many of the requests in Plaintiff's First Set of Requests for Production of Documents cannot, under any circumstances, be considered confidential or proprietary (*see* Requests 1, 2, 3, 4, 7, 8, 10, 11, 12, 15, 16, 17, 18, 19, and 20).  Nonetheless, TRU refused to produce <u>any</u> documents until the entry of a "suitable" protective order.

Equally galling, TRU dragged out the entry of the protective order for weeks, demanding that the order include a "Highly Confidential – Attorneys' Eyes Only" designation.  Yet, when TRU finally produced documents, <u>not a single document was designated "Highly Confidential – Attorneys' Eyes Only</u>."  TRU had to know that it was not going to produce any such documents, but used the issue as a pretext to delay.

TRU now apparently contends – contrary to its earlier responses and statements that it would produce the documents and information − either that it does not have documents or information, or that the requests are objectionable on some other basis. Such responses/objections are without merit.  Going through the specific disclosures, interrogatories and requests at issue:

Initial Disclosures

In its Initial Disclosures, TRU indicated that it had in its possession several categories of documents including, without limitation, documents demonstrating how TRU creates its website listings, documents regarding how TRU's website listings at issue were created, and documents evidencing TRU's cessation of the use of the "Hunk Ta Bunk Ta®" working on the TRU website.  Despite repeated requests, no such documents have been produced.  Ms. Dines is entitled to an order compelling TRU to produce all documents disclosed in its Initial Disclosures.

Interrogatories

1.      Interrogatory 1 requests, in essence, that TRU identify the products that it has identified with the phrase Hunk-Ta-Bunk-Ta®, and for each product provide basic information such as the period of time during which the phrase was used, the total number and dollar amount goods sold on a monthly and annual basis, and the channels of trade through which the product has been sold by TRU.

The Response to Interrogatory 1, even as supplemented, (Exhibit E) is totally insufficient.  In the first place, based upon Plaintiff's investigation, TRU has not identified all of the products with which it has used the phrase Hunk-Ta-Bunk-Ta®.  Even as to the products that it has identified, TRU refuses to specifically and separately state for

each product the period of time during which the phrase was used, or the number of dollar amount of sales on a monthly basis.  Equally important, though there is ample evidence that these products were sold through resellers and advertised though third parties (above), TRU refuses to provide any information concerning such activities.  Ms. Dines is entitled to an order compelling TRU to a full and complete response to this Interrogatory.

2.     The response to Interrogatory 2, as supplemented, is insufficient and overtly evasive. *See* Exhibit D.  The Interrogatory asked TRU to "Describe in detail the circumstances under which each of the Accused Products were conceived, designed, developed, first manufactured, first offered for sale and first sold, including but not limited to; an identification of all entities involved in the manufacture, marketing, sale, or distribution of the Accused Products."  Unquestionably, TRU has or has access to such information.  It is not credible that TRU does not know such information for these products which, at least according to TRU's own advertising, were specifically designed for TRU.  Moreover, as discussed above, these TRU products were advertised with the phrase Hunk-Ta-Bunk-Ta® and sold through resellers and third parties.  Particularly because TRU claims that it has no information concerning how the Hunk-Ta-Bunk-Ta® mark came to be associated with these products, Ms. Dines is entitled to an order compelling TRU to provide this information with respect to all Accused Products.

3.     Interrogatory 9 requests detailed information concerning actions taken by TRU after receiving Ms. Dines' original demand letter dated May 4, 2012.  Though TRU has affirmatively pled these facts as a defense, and indicated that it will call witnesses and use documents at trial to show such actions, its interrogatory response does not

provide any information such as names, dates, or actions taken.   The information requested in Interrogatory 9 information is clearly calculated to lead to the discovery of admissible evidence, since it will provide information concerning where the phrase appeared on the website, how and when it was removed, and who was involved.   It will also provide information on what was not done.   Ms. Dines is entitled to an order compelling TRU to provide this information with respect to all Accused Products.

4.      Interrogatories 10 and 11 request detailed information on all forms of advertising and marketing of the Accused Products.   The evidence in this matter reflects that the Accused Products have been advertised, compared, and marketed on a wide variety of TRU-controlled websites, as well as websites maintained by others.   Based on Plaintiff's investigation, it is clear that such third-party advertising and marketing was done under agreements between the website operators or middlemen and TRU, using information provided by TRU.   This investigation has also disclosed that some retail vendors apparently have purchased Accused Products in bulk for resale.

No such information has been provided by TRU as requested by these interrogatories.   Such information is clearly calculated to lead to the discovery of admissible evidence, and Ms. Dines is entitled to an order compelling TRU to provide this information with respect to all Accused Products.

5.      Interrogatory 12 seeks information concerning TRU's customers for Accused Products.   The response, put charitably, is vague, general and evasive. *See* Exhibit B. Again, Plaintiff's investigation indicates that some of the retail online and other vendors have purchased Accused Products in bulk for resale.   Such information is clearly calculated to lead to the discovery of admissible evidence and Ms. Dines is

entitled to an order compelling TRU to provide this information with respect to all Accused Products.

6.      None of TRU's interrogatory responses (original or supplemental) were signed under oath by an officer or agent, as required by Rule 33.   Though signed responses have been requested and promised, none have been forthcoming.   Ms. Dines is entitled to an order compelling TRU to provide interrogatory responses signed under oath by an officer or agent, as required by Rule 33.

Requests for Production

TRU's document production, made 3½ months after the requests were served, is transparently inadequate.   TRU has produced almost no documents from its files, but simple sent back documents and e-mails received from Ms. Dines' counsel.   Ms. Dines specifically requests an order compelling production of the following:

1.      Request 1 seeks all documents relating to the creation or adoption of Hunk-Ta-Bunk-Ta® in connection with the Accused Products.

•      It is undisputed that this term appeared on various web pages controlled by TRU, but TRU has not produced a single such page.   TRU has admitted that it had such materials in its possession when notified of potential litigation by Ms. Dines on May 4, 2012.   Indeed, TRU by way of defense has specifically alleged that it has removed all such offending references, so it must have located them on its various web pages.   TRU should have copies of all of these materials.   If TRU destroyed this critical evidence after May 4, 2012, substantial issues of spoliation arise.   In any event, Ms. Dines is entitled to receive hard and/or electronic copies of all web pages controlled by TRU on which this phrase appeared, or a full explanation of when, who and how they

were destroyed.

• Such web pages needed to be designed, prepared, and produced by someone – presumably by TRU employees, but at a mi nimum by TRU agents or contractors. Indeed, in its Initial Disclosures, TRU stated that it would rely on documents demonstrating how TRU creates its website listings, and documents regarding how TRU's website listings at issue were created. Ms. Dines is entitled to receive hard and/or electronic copies of all e-mails, instructions, design documents, reports, templates, logs, data entry, and the like relating to the design of the web pages for each of the Accused Products.

• Based on Plaintiff's investigation, the content for these web pages came from one or more databases maintained by TRU, which stored data relating to each Accused Product. Ms. Dines is entitled to receive hard and/or electronic copies of all data, e-mails, data entry and revision logs, and other documents relating to the creation and maintenance of the database entries for each of the Accused Products.

2. Request 3 seeks all documents relating to the TRU's first use of Hunk-Ta-Bunk-Ta® in the United States in connection with any goods or services. In its interrogatory responses, TRU provided a specific date for such first use, yet not a single supporting document was produced. Again, Ms. Dines is entitled to receive hard and/or electronic copies of all documents relating to the creation of whatever TRU-controlled webpage first used Hunk-Ta-Bunk-Ta®. If that evidence has been destroyed, this fact and the full circumstances surrounding such destruction must be disclosed.

3. Request 4 seeks documents containing the name, model number, SKU and any other identifying symbol, for all Accused Products. As mentioned above, TRU

14

has not identified several such products; Ms. Dines is entitled an order compelling the production of documents that identify all such products.

4.      Request 5 seeks documents reflecting quarterly data regarding sales revenue, inventory numbers, production costs, and profits, on a model-by-model basis, for the Accused Products.   TRU produced only documents (apparently prepared for litigation, not original documents) showing the totals for some Accused Products for a period from 2008-12, and not containing any indication of profit or detail concerning costs.

5.      Request 7 seeks all documents relating to TRU's use of Hunk-Ta-Bunk-Ta® in connection with the development, production, distribution or sale of products from 2007 to present.  This Request not only includes most of the documents set forth above, but also communications, designs, agreements, and other documents relating to the development and production of each of the Accused Products.  This Request also covers all of TRU's internal marketing discussions and advertising materials concerning the Accused Products, and arrangements with, communications with, and sales of Accused Products to and through other online websites, advertisers, afilliates and retailers.  As discussed above, TRU has such arrangements with a wide variety of entities that have advertised or sold Accused Products using the Hunk Ta Bunk Ta® mark.  This request also covers sales figures for sales of Accused Products to such entities for resale.  TRU has refused to provide any such documents, and Ms. Dines is entitled to receive hard and/or electronic copies of all agreements, e-mails, sales and payment materials, technical documents, data transfers, order, and documents dealing with these issues.

6.      Request 8 seeks all documents constituting advertisements, promotions, and marketing materials for all Accused Products.   Nothing was produced until six images were produced on June 24.   While TRU contends that none of these materials mention Hunk-Ta-Bunk-Ta®, Ms. Dines is entitled to verify this statement, and is entitled to receive hard and/or electronic copies of all electronic or paper advertisements, catalogues, print ads, in-store promotions, signage and labeling, product labeling, and any communications concerning those items, involving the Accused Products.

7.      Request 9, insofar as it covers documents referencing Hunk-Ta-Bunk-Ta®, covers many of the same items listed above.

8.      Request 11 seeks all documents that refer or relate to or constitute steps taken by TRU to stop the use of Hunk-Ta-Bunk-Ta® in connection with its products. This information cannot be privileged, since TRU has affirmatively disclosed and represented that it has taken such steps, and intends to use such "facts" in its defense. Ms. Dines is entitled to see all documents referencing such actions.   Moreover, given TRU's claimed lack of knowledge of how its use of Hunk-Ta-Bunk-Ta® on its website arose, or on which web pages and sites it appeared, finding out how the phrase was removed is reasonably calculated to provide Ms. Dines with admissible evidence concering where and how it got there in the first place.

Request 11 also seeks all documents that relate to any investigation into the number and type of Accused Products sold by TRU.   While some of the internal communications on this subject might be privileged, all non-privileged material (*e.g.* work orders, data entry, logs, etc. showing what work was done) must be produced.

Moreover, to the extent that TRU intends to waive the privilege and introduce evidence concerning such an investigation at trial, Ms. Dines entitled to the documents concerning that investigation now so that she can conduct proper discovery into those matters.

9.    Request 12 seeks a copy of each webpage or other document where Hunk-Ta-Bunk-Ta® was used.   This request covers all of TRU's websites, not just toysrus.com.   It is established that Hunk-Ta-Bunk-Ta® was used on toysrus.com and various other TRU-controlled websites, yet nothing was produced.   It is also established that Hunk-Ta-Bunk-Ta® was used in conjunction with Accused Products on other, third-party controlled web pages, and that TRU may have copies of those web pages.   Ms. Dines is entitled to receive hard and/or electronic copies of all web pages or other documents on which this phrase appeared.

10.    Request 13 seeks any analysis or research relating to consumer use of the toysrus.com website, such as research or analysis relating to the purchasing behavior of TRU's consumers.   Such information is reasonably related to lead to the discovery of admissible evidence on damages, and Ms. Dines is entitled to receive hard and/or electronic copies of all documents responsive to this request.

11.    Request 14, at a minimum, covers many of the same materials mentioned with respect to Request 7.    It also covers all documents concerning the Accused Products exchanged with the manufacturer and/or exporter of the products to TRU, which apparently is Hugfun, International, Inc.   Nothing was produced.   Ms. Dines is entitled to receive hard and/or electronic copies of all documents responsive to this request.

12.     Request 15 seeks all advertising, etc. using Hunk-Ta-Bunk-Ta®.  TRU's original response says that responsive documents will be produced.  Nothing was produced, even though there is evidence that the phrase was used more than on web pages.  If TRU's position now is that there are no such documents, then it must say so in a pleading.  If there are such materials, then they must be produced.

13.     Request 16 seeks access to samples of each of the Accused Products with any different types of labeling used prior to May 2012.  TRU has refused to produce any such items, and Ms. Dines is entitled to an order compelling production.

14.     Request 22 seeks copies of all materials reviewed in preparation of TRU's interrogatory responses.  These materials are highly relevant, yet none were produced.  For example, in response to Interrogatory 1, TRU stated that "The Hunk-Ta-Bunk-Ta name appeared only on Defendant's website."   Ms. Dines is entitled to see all documents and materials reviewed by TRU to justify that statement.  Similarly, TRU stated in response to Interrogatory 9 that "Plaintiff subsequently identified non-trademark use of the term Hunk-Ta-Bunk-Ta appearing on Defendant's website, and Defendant immediately removed any and all references to or use of the "Hunk Ta Bunk Ta" designation."   Again, Ms. Dines is entitled to see all documents and materials reviewed by TRU to justify that statement.

## SANCTIONS

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the party to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless the opposing party's nondisclosure, response, or objection was substantially justified.  Counsel for

Ms. Dines typically eschews sanctions requests, particularly where there is a good faith dispute over specific discovery.

However, the circumstances here are unique.  For more than 4½ months, TRU has transparently delayed, dissembled, played semantic games, and ultimately resisted producing any meaningful documents or information in this matter.  As part of this strategy, it:

- Without any justification, refused to produce admittedly non-confidential documents, or answer a number of basic interrogatories, until a protective order was entered;

- Continued to delay production until the entry of a protective order containing a "Highly Confidential – Attorneys' Eyes Only" designation, when it had no such documents to produce;

- Ultimately – but only after repeated demands from Plaintiff – produced less than 20 pages of documents from its files;

- Has not provided sworn interrogatory responses;

- Takes the incredible position that it has not a single shred of information or document concerning how its products came to be advertised on its own websites using Ms. Dines' unique Hunk-Ta-Bunk-Ta® brand, or a single document reflecting such usage;

- Denies any knowledge of agreements, communications and arrangements with third parties that clearly exist;

- Refuses to identify a single TRU employee with direct knowledge of the matters at issue;

- States that it has no longer has documents and information that by definition must have existed and which it earlier admitted that it possessed; and

- Refuses to produce documents that are clearly discoverable, including documents that it has represented that it will use in its defense.

Under such circumstances, Plaintiff submits that Rule 37(a)(5)(A) should be applied.

Dated:  June 26, 2013.

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By:   *s/William D. Meyer*
         William D. Meyer, No. 6562
         Christopher W. Ford, No. 28632
         921 Walnut Street, Suite 200
         Boulder, CO  80302
         Phone:  (303) 442-6514
         Fax: (303) 442-6593
         meyer@hbcboulder.com

Attorneys for Plaintiff Katherine Dines

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013, I electronically filed the foregoing

**PLAINTIFF'S MOTION TO COMPEL INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS, AND FOR SANCTIONS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons at the given e-mail address:


Jason C. White
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Dr.
Chicago, IL 60601-5094
jwhite@morganlewis.com

Kristin H. Altoff
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
kaltoff@morganlewis.com


*s/Tanya J. Patterson*
Tanya J. Patterson
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO  80302
Phone:  (303) 442-6514
Fax: (303) 442-6593