IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 12-cv-2279-PAB-KMT
_____

KATHERINE DINES, an individual,

Plaintiff,

v.

TOYS "R" US-DELAWARE, INC., a Delaware corporation,

Defendant.

_____

DEFENDANT TOYS "R" US-DELAWARE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY FROM PETER KENT
_____

Defendant Toys "R" Us–Delaware, Inc. ("Defendant" or "Toys "R" Us") hereby submits

this Opposition to the Motion to Exclude Certain Expert Testimony from Peter Kent (Dkt. No.

107) filed by plaintiff Katherine Dines ("Plaintiff").

I.    INTRODUCTION

Plaintiff does not dispute Mr. Kent's qualifications to provide the opinions in his rebuttal

expert report. Indeed, Plaintiff acknowledges that he is a "prolific writer concerning internet

topics," Dkt. No. 107 at 3, and has the requisite experience and education to provide expert

testimony regarding search engine optimization and Google searching. Plaintiff also fails to

assert a credible challenge to Mr. Kent's methodology. Instead, Plaintiff argues that Mr. Kent's

web searches, done in early 2014, have no bearing on what websites looked like from 2008

through mid-2012, the time period during which Plaintiff's trademarked "Hunk Ta Bunk Ta"

name appeared on some pages of Toys "R" Us's website. However, Mr. Kent's expert report

was expressly submitted in rebuttal to the Plaintiff's own expert reports. Those reports submitted and opined on web searches that were also done after the 2008 through mid-2012 time period. Plaintiff and her own experts are the ones who contend that matters arising after mid-2012 are relevant to this action. As a rebuttal expert, Mr. Kent's role is to critique and offer his own conclusions regarding the opinions set forth in the reports of Plaintiff's purported experts.[1] Two of Plaintiff's experts conducted searches in late-2012 and throughout 2013 – time periods which fall outside of what Plaintiff now contends is the "relevant" time period. Thus, there is no basis for Plaintiff to claim that Mr. Kent's opinions should be excluded on the basis that Mr. Kent also conducted searches outside of this time period. Indeed, whatever relevance Plaintiff's experts' searches from 2012 and 2013 have, it is appropriate for Mr. Kent to respond to these searches with searches of his own. *See* Dkt. No. 109-2 at 4; Dkt. No. 110-3 at 3, ¶¶ 1-4, 15-19. Nevertheless, even to the extent the Court determines that Plaintiff's criticisms have any merit, these criticisms merely go to weight that should be accorded to Mr. Kent's opinions and not to the admissibility of the opinions.

In her motion, Plaintiff also reserves her right to challenge any expert testimony that Mr. Kent may provide regarding a website called the WayBackMachine at www.archive.org. *See* Dkt. No. 107 at 13. However, Plaintiff provides no substantive criticism of the WayBackMachine – a program her own experts rely on – and there is nothing objectionable about Mr. Kent explaining how the WayBackMachine works and what he did to obtain various web pages that were preserved there.

---

[1] Although Toys "R" Us refers to Plaintiff's "experts" in the instant Opposition, Toys "R" Us maintains that these individuals are not qualified to provide expert opinion in this action for the reasons set forth in Toys "R" Us's motions to exclude their opinions. *See* Dkt. Nos. 109 & 110.

2

Ultimately, Plaintiff's motion ignores the role of a rebuttal expert and makes arguments which go to the weight that a jury should give to Mr. Kent's opinions and not the admissibility. Accordingly, Plaintiff's motion should be denied.

## II.     BACKGROUND

Toys "R" Us sold various plush stuffed animals under the brand name Animal Alley. It mistakenly displayed Plaintiff's Hunk Ta Bunk Ta trademark on its website in connection with some of these products from mid-2008 to mid-2012. Through her purported experts Messrs. Bernier and Sanders, Plaintiff wants to introduce evidence of website print outs displaying Toys "R" Us products and Plaintiff's mark and evidence regarding the likelihood that a consumer would have seen these websites. In their expert reports, neither Mr. Bernier nor Mr. Sanders provide any evidence of websites that would have been displayed during the relevant time period of the purported infringement. Instead, both rely on searches conducted *after* mid-2012 – i.e. *after* the name was no longer on Toys "R" Us's website.

Toys "R" Us retained Mr. Kent to evaluate the reports of Plaintiff's experts. He found many of their opinions deficient and rendered a rebuttal report. In the course of critiquing the opinions of Plaintiff's experts and providing his own, Mr. Kent did his own web searches, also conducted *after* mid-2012.

## III.     ARGUMENT

### A.     Mr. Kent's Rebuttal Opinions Are Based On Sound Methodology

Contrary to Plaintiff's claim, in the relevant portion of his expert report, Mr. Kent does not imply that he could recreate web search results as they existed prior to the filing of this lawsuit and does not purport to opine on what search results would have been displayed prior to 2012. Instead, after reviewing the reports of Messrs. Bernier and Sanders – reports which

3

included numerous search strings and web page print outs for searches conducted in 2012 and throughout 2013 – Mr. Kent formed various opinions regarding those search results. Mr. Kent also conducted independent searches in March of 2014 (using the search terms cited in Plaintiff's experts' reports), which he concluded provided no evidence to support the opinions of Plaintiff's purported experts. Mr. Kent's opinions are proper rebuttal expert opinions, which Plaintiff has provided no legal basis to exclude.

### 1.    Mr. Kent Properly Relied On Evidence Cited By Plaintiff's Purported Experts

Mr. Kent opined that, based on his expert analysis of the evidence relied on by Plaintiff's two experts and Google searches he conducted in March 2014, that there was no evidence that a normal consumer searching for Hunk Ta Bunk Ta products or plush-toy terms would ever encounter websites displaying the phrase Hunk Ta Bunk Ta, *see* Dkt. No. 107, Ex. A (hereinafter "Kent Report"), ¶ 40 or that a consumer running the searches that Plaintiff's counsel ran would be led to a page on which the consumer could place an order for a plush toy that was mistakenly identified as a being a Hunk Ta Bunk Ta product, *see id.* Plaintiff seeks to exclude Mr. Kent's testimony on the basis that it is irrelevant and unreliable because it is not based on searches conducted from 2008 to mid-2012. However, Plaintiff ignores the fact that Mr. Kent is a **rebuttal** expert – thus, his role is solely to examine the data relied upon and opinions of Plaintiff's experts and provide opinions regarding the validity of Plaintiff's experts' conclusions. *See Carroll v. Allstate Fire & Cas. Ins. Co.*, C.A. No. 12-cv-00007, 2013 WL 3810864, at *4 (D. Colo. July 22, 2013) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party."). Thus, Plaintiff's contention that Mr. Kent should have relied on search results from 2008-2012 is meritless as Mr. Kent is simply critiquing and evaluating the very evidence Plaintiff's experts relied upon, which was searches from 2012 and

throughout 2013.  Had Plaintiff's experts relied on evidence from web searches conducted during what Plaintiff now contends is the relevant time period – 2008 to mid-2012 – then Mr. Kent would have provided rebuttal testimony regarding searches conducted during this time period. Plaintiff's own experts' failure to rely on the most relevant data does not undermine Mr. Kent's rebuttal opinions.  Indeed, if Plaintiff concedes that all searches conducted by or relied upon by her experts from mid-2012 forward are irrelevant to the issues presented in this case, then there would be no reason to admit the expert opinions of Messrs. Bernier and Sanders; thus, Toys "R" Us would not need to introduce the rebuttal expert testimony of Mr. Kent.

### 2.    Mr. Kent's Opinions Are Based On His Expertise, Knowledge, And Experience

Despite acknowledging that Mr. Kent is qualified to offer expert opinion and is a "prolific writer regarding Internet topics," Dkt. No. 107 at 3, Plaintiff contends that his opinions should be excluded as they are not based on specialized knowledge or expertise, and, instead, invade the province of the jury.  *See id.* at 5, 7, 8.  Plaintiff's argument, however, misapprehends the role of a rebuttal expert.  As a rebuttal expert, Mr. Kent properly evaluated the evidence relied upon by Plaintiff's experts and formulated his own observations and opinions regarding that evidence.  *See Carroll*, 2013 WL 3810864, at *4.  Throughout his rebuttal expert report, Mr. Kent specifically states that he is basing his evaluation of the evidence or lack thereof on his background, experience, and analysis of Plaintiff's experts' reports and searches that he independently conducted.  *See* Kent Report, ¶¶ 2, 40, 46.  Mr. Kent's expert analysis of the evidence relied upon by Plaintiff's experts does not invade the province of the jury; rather, Mr. Kent's analysis will assist the jury with determining how much weight to give to the opinions and evidence of Plaintiff's experts.  *See generally Bamcor LLC v. Jupiter Aluminum Corp.*, 767

F. Supp. 2d 959, 976 (N.D. Ind. 2011) ("An opposing expert can show why the expert's opinion does not hold up under the facts as they present them to be.").

### 3.    Mr. Kent's Opinions Regarding The Fact That "He Has Seen No Evidence" Of Certain Matters Are Based On Sound Methodology

Plaintiff contends that Mr. Kent's opinions are based on flawed "methodology," but fails to even assert that Mr. Kent employed methodology that would not be used by an expert in the field. Indeed, although framed as objections to Mr. Kent's methodology, Plaintiff is actually making arguments regarding the substance of Mr. Kent's opinions. Plaintiff's purported methodology criticisms all go to the weight that should be given to Mr. Kent's opinions and, thus, are not grounds for exclusion.

First, Plaintiff claims that Mr. Kent's own Google searches were based on flawed methodology because Mr. Kent only examined the first twenty results of each Google search. *See* Dkt. No. 107 at 4. However, Mr. Kent provided the rationale for this decision: "[n]ormal consumers almost never look at the second page of search results." Kent Report, ¶ 35. Consistent with his knowledge of what a normal consumer would do, Mr. Kent did not offer opinion testimony regarding search results beyond the second page. Although Plaintiff contends this is "*ipse dixit*" reasoning, Plaintiff fails to point to any source that would refute Mr. Kent's statement that normal consumers do not look into buried results in their Google searches. Unquestionably, Mr. Kent – a person who Plaintiff concedes is qualified to render expert opinions regarding internet searching and who provides internet-strategy consulting services – has knowledge regarding the search habits of normal consumers. Thus, there is no evidence that Mr. Kent's decision to examine only the first two pages of search results is flawed.

Next, Plaintiff criticizes Mr. Kent's reliance on the *Google Adwords Keywords Planner* as a basis for his conclusion that there is no evidence consumers would conduct the complex

searches conducted by Plaintiff's counsel and relied on by Mr. Sanders. *See* Dkt. No. 107 at 7. However, Plaintiff does not even assert that the *Google Adwords Keywords Planner* is not a source that an expert in the field would rely on in formulating an opinion – a showing which would go to the admissibility of Mr. Kent's opinion. *Cf. 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (stating the court considers various factors in assessing reliability of methodology including, *inter alia*, "general acceptance of a methodology"). Instead, Plaintiff makes arguments that address the amount of weight the jury should give to Mr. Kent's rebuttal opinion. For instance, Plaintiff contends that Mr. Kent's opinion is flawed because Mr. Kent relies upon data that only covers Google searches conducted over a twelve-month period. *See* Dkt. No. 107 at 7. This argument is preposterous because this time period includes all of the searches conducted by Mr. Bernier. Moreover, even presuming that these criticisms have any merit, a fact which Toys "R" Us disputes, they are issues that Plaintiff's counsel can raise during cross examination of Mr. Kent. *See Bullock v. Daimler Trucks N.A., LLC*, C.A. No. 08-cv-00491-PAB-MEH, 2010 WL 3922084, at *5 (D. Colo. Sept. 30, 2010) (Brimmer, J.) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." "As long as a logical basis exists for an expert's opinion the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony.") (citations omitted); *Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) ("As to the substance of [the expert's] testimony . . . 'the burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion.'"). Thus, Plaintiff's arguments do not impact admissibility of Mr. Kent's opinion, but rather address solely the weight that the Court should give to Mr. Kent's testimony.

7

*See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991) ("[D]oubts suggested by the trial judge concerning the sufficiency of the factual basis to support [the expert's] opinion go to its weight, and not to its admissibility.").

Finally, Plaintiff criticizes Mr. Kent's determination that consumers could not purchase Toys "R" Us products at the websites returned in the search results that Plaintiff's experts relied on and in the Google search that Mr. Kent conducted. *See* Dkt. No. 107 at 9. Mr. Kent analyzed the evidence Plaintiff's experts relied upon and correctly determined that the websites returned in the search results did not allow a consumer to purchase a Toys "R" Us product. This opinion is based on his own observations and entirely consistent with the content of the websites themselves in this case. Plaintiff fails to articulate how Mr. Kent's analysis was flawed. Instead, Plaintiff confusingly claims that Mr. Kent should have visited each page returned in Plaintiff's experts' search results, but then claims that doing that would be "futile." *See id.* Mr. Kent does not opine regarding whether a consumer could have purchased a product at these sites years ago, rather, he evaluates the evidence that Plaintiff's experts relied upon and determined there was no evidence that at the present time a consumer could purchase a Toys "R" Us product on the various websites cited by Plaintiff's experts. He is simply rebutting the opinions of Plaintiff's experts. Plaintiff's criticism of Mr. Kent's conclusion does not demonstrate that his methodology was flawed.

**B.    Mr. Kent's Opinion On The Popularity Of Websites Is Admissible**

Plaintiff contends that Mr. Kent's opinions regarding the popularity of websites should be excluded on the basis that (1) Mr. Kent relies solely on 2014 data for the popularity of the websites and (2) Mr. Kent did not base his popularity assessment exclusively on a comparison between shopping websites and instead based his comparison on all websites (including

8

shopping, sports, and news websites).  *See* Dkt. No. 107 at 10-11.  Again, Plaintiff ignores the fact that Mr. Kent is a rebuttal expert and is opining on the websites identified by Messrs. Sanders and Bernier in their reports.  Plaintiff's criticisms address the weight that the jury should give to Mr. Kent's opinions, not the admissibility of those opinions.  Plaintiff has not demonstrated that an expert would not rely on current data to form an opinion regarding a website's popularity or that it was flawed methodology to conduct a general comparison of websites for popularity purposes and not isolate solely shopping websites.  Accordingly, Plaintiff's criticisms of Mr. Kent's popularity analysis should be raised during cross-examination of Mr. Kent to assist the jury with determining the appropriate weight to give to Mr. Kent's opinions; these criticisms do not provide a basis for exclusion of Mr. Kent's opinions.  *See Werth*, 950 F.2d at 654.

> **C.      Plaintiff Has Not Demonstrated That Mr. Kent's Opinion Regarding The Content Of Toys "R" Us's Web Pages Should Be Excluded**

Plaintiff contends that Mr. Kent's opinion regarding search results leading to Toys "R" Us web pages must be excluded as Mr. Kent does not identify Toys "R" Us web pages that he specifically reviewed.  However, Plaintiff ignores the fact that Toys "R" Us pages are explicitly listed in the Mr. Kent's search results, *see, e.g.*, Ex. B, Ex. D, and Ex. G to the Kent Report[2], and also in the search results of Messrs. Bernier and Sanders, *see, e.g.*, 109-2 at 8; 110-3, ¶ 4.  Thus, plainly Mr. Kent reviewed these results.  Plaintiff's unsupported claim that Mr. Kent did not "undertake any serious investigation of the contents of tosyrus.com" goes merely to the weight that should be accorded to Mr. Kent's opinion, not to the admissibility.

---

[2]      Incredibly, Plaintiff omitted the exhibits from Mr. Kent's report.  For the Court's convenience, all of them are attached hereto as Exhibits A-G.

### D.    Mr. Kent Should Be Permitted To Testify Regarding WayBackMachine

Plaintiff reserves the right to object to Toys "R" Us's introduction of WayBackMachine web image print outs, which are attached as Exhibit G to Mr. Kent's Report.  These images show what the various pages on the Toys "R' Us website looked like at certain relevant times. Although Mr. Kent did not provide opinions in his rebuttal expert report regarding the contents of the WayBackMachine print outs, he did provide opinion regarding what the WayBackMachine is and the purpose that WayBackMachine can serve in litigation.  *See* Kent Report, ¶¶ 90-91.  Toys "R" Us intends to offer Mr. Kent's testimony at trial to educate the jurors on the WayBackMachine – what is does and what it is used for – as jurors are unlikely to be knowledgeable regarding WayBackMachine, how it works, or its purpose in the instant action.  Mr. Kent will also testify as to what he did to obtain the WayBackMachine images and why they are authentic.

Mr. Kent's testimony regarding the basic use of WayBackMachine is not objectionable as Plaintiff's expert, Mr. Bernier, relied upon website page print outs from archive.com and found these results to be a reliable source of information that formed the basis for opinions offered in the instant action.  *See* 110-3 at 3.  Accordingly, the juror's knowledge of WayBackMachine is relevant to the instant action and Mr. Kent – an expert familiar with the WayBackMachine – should be permitted to educate the jury on this information source.[3]

### IV.    CONCLUSION

For the reasons set forth above, Toys "R" Us respectfully requests that the Court deny Plaintiff's Motion to Exclude Certain Expert Testimony of Peter Kent (Dkt. No. 107).

---

[3]    Consistent with his report, Mr. Kent will not be proffering opinions regarding the substance of the print outs from archived versions of websites.

Dated:  June 6, 2014                    Respectfully submitted,

*/s/ Andrew C. Whitney*
Gregory T. Parks
Andrew C. Whitney
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
gparks@morganlewis.com
awhitney@morganlewis.com

Jason C. White
Morgan, Lewis & Bockius LLP
77 West Wacker Dr.
Chicago, IL 60601-5094
Telephone:  312.324.1775
Facsimile:  312.324.1001
jwhite@morganlewis.com

*Attorneys for Defendant Toys "R" Us-Delaware, Inc.*

11